**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James McGee, | No. CV-17-04024-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Zurich American Insurance Company, | |
| Defendant. | |

Plaintiff James McGee sued Defendant Zurich American Insurance Company for breach of contract and bad faith, alleging that Defendant improperly refused to defend Elizabeth Foutz in an underlying tort action brought against her by Plaintiff. Plaintiff was injured when his vehicle collided with Foutz, who was driving a car provided by her employer, AAA Landscaping. Defendant provided auto insurance to AAA, and the key questions for trial are whether the policy covered Foutz's use of AAA's vehicle at the time of the accident and whether Defendant acted in bad faith when it denied coverage. Foutz assigned her insurance coverage and bad faith claims to Plaintiff in settlement of the underlying tort case, and Plaintiff now asserts those claims against Defendant.

The parties have filed various pretrial motions. This order will address the motions, resolving many of them and identifying issues in others to be addressed at the Final Pretrial Conference on Friday, December 17, 2021. The parties have not requested oral argument on any of these motions.

**A.     Plaintiff's MIL 1 – Alcohol, Intoxication, or Impairment.**

Plaintiff moves to exclude any evidence of Foutz's intoxication at the time of the accident, arguing that it is irrelevant and unduly prejudicial.  Doc. 81.  Plaintiff argues that the only trial issue on coverage is whether Foutz's use of the vehicle was a substantial deviation from her permitted use "in terms of duration, distance, time, or purpose," and that her alcohol use is not relevant to any of these factors.  *Id.* at 2.  Plaintiff also contends that the Ninth Circuit, in reversing this Court's grant of summary judgment, held that Foutz's alcohol use did not negate her permissive use, thereby removing the issue from this case.  *Id.* at 3.  The Court is not persuaded on either point.

First, the Court cannot conclude that the determination of permitted use is limited to "duration, distance, time, or purpose" as Plaintiff contends.  Those words were used by the Arizona Court of Appeals in *James v. Aetna Life & Cas.*, 546 P.2d 1146, 1148 (Ariz. Ct. App. 1976), when it adopted the minor deviation rule, and were cited by the Ninth Circuit in the memorandum decision in this case, Doc. 69-1 at 3.  But the Court cannot conclude that they constitute an exclusive list of factors that can make the minor deviation rule inapplicable.  The court in *James* explained:

> The intermediate position is the 'minor deviation rule', i.e., if the bailee's use is not a gross, substantial or major violation, even though it may have amounted to a deviation, protection is still afforded to the bailee under the omnibus clause.  Thus, under this rule the deviation is 'material' or 'major' when the deviation from the purpose for which the permission was originally granted was substantial in terms of duration, distance, time, or purpose.

546 P.2d at 1148.  The key question is whether use of the vehicle was a "gross, substantial, or major violation" of the permission granted by the employer.  Although *James* uses the words "duration, distance, time, or purpose" to describe factors that can be considered in making this decision, it does not state that this list is exclusive.  And as far as the Court can determine, no other Arizona case has ever held the list to be exclusive.[1]

---

[1] These words, which *James* used in addressing an omnibus clause in an insurance contract, are quoted in *National Indemnity Co. v. North American Indemnity*, No. 1 CA-CV 90-201, 1991 WL 263707, at *2 (Ariz. Ct. App. Dec. 17, 1991), but that is an unpublished case with no precedential value.  The language was also quoted in *Reisch v.*

*James* cited Couch on Insurance for the minor deviation rule (546 P.2d at 1148), and Couch does not limit the considerations to "duration, distance, time, or purpose." Rather, Couch describes the rule in these terms: "there is no omnibus coverage where there is a major or substantial departure or deviation or a gross violation *of the original permission, purpose, or instructions* relating to the use of the automobile."  8 Couch on Insurance § 113:11 (2021) (emphasis added). Courts applying the minor deviation rule have also identified various factors as relevant to whether the conduct constituted a major deviation from the permission granted. For example, *O'Neal v. State Farm Mut. Auto. Ins. Co.*, 977 A.2d 326 (Del. 2009), explained: "[W]e conclude that the factors essential to determining whether a permittee's use exceeded his initial permission are simply those Five Ws (and one H) that are widely held as the basic tools of information gathering: Who, What, When, Where, Why, and How." *Id.* at 331.

Second, the Court cannot conclude that the Ninth Circuit held as a matter of law that Foutz's intoxication cannot constitute a major deviation from the permission she was granted by her employer, AAA.[2] The Ninth Circuit stated four separate times that it was viewing the evidence in the light most favorable to Plaintiff. Doc. 69-1 at 3, 4, 5, 6. That is the perspective from which it discussed the evidence and reached factual conclusions in

---

*M & D Terminals, Inc.*, 884 P.2d 242, 249 (Ariz. Ct. App. 1994), but that case considered whether violation of a no-passenger rule constituted more than a minor deviation from the permission granted, and did so without relying on the fact that a no-passenger rule falls outside the list of "duration, distance, time, or purpose."

[2] Although the Ninth Circuit found the reasoning of *National Indemnity Co.*, 1991 WL 263707, to be "persuasive" on this issue (Doc. 69-1 at 5), the Court cannot conclude that the Ninth Circuit thereby altered the state of Arizona law. *National Indemnity* is a 1991 unpublished decision of the Arizona Court of Appeals. Under Arizona law, it has no precedential value (Arizona Supreme Court Rule 111(c)(1)) and may not be cited "for persuasive value . . . if it was issued on or after January 1, 2015" (Rule 111(c)(1)(C)). Thus, *National Indemnity* is not precedent in Arizona and cannot even be relied upon for its persuasive value. The Court cannot conclude that the Ninth Circuit, *sub silentio* and without considering any other authorities on the minor deviation rule, intended to elevate *National Indemnity* to the status of binding Arizona precedent. The more reasonable explanation is that the Ninth Circuit, while reviewing the facts of this case in the light most favorable to Plaintiff, found that the reasoning of *National Indemnity* provided a rational basis on which a jury could find for Plaintiff, making the Court's grant of summary judgment to Defendant improper. To afford the language of *National Indemnity* any greater weight would be to violate Arizona Supreme Court Rule 111(c)(1) in a diversity case where the Court must apply Arizona law faithfully.

this case. Of course, neither this Court nor the jury are required to view the evidence in this light at trial.

The Ninth Circuit also specifically stated that summary judgment was precluded in this case by "a triable issue of fact as to whether Foutz's use of the vehicle at the time of the accident was either permissive or a minor deviation from the permission she was granted." *Id.* at 7. Thus, whether Foutz's intoxication, alone or in combination with her use of the vehicle for personal purposes, constituted "a gross, substantial or major violation" of the terms of her permissive use is a question of fact for the jury. Indeed, the *James* case that adopted the minor deviation rule in Arizona specifically stated that "[w]hether or not Robles' operation of the vehicle at the time of the accident was within the 'minor deviation' rule was a question for the trier of fact." *James*, 546 P.2d at 1148. Plaintiff's MIL 1 (Doc. 81) is **denied**.

### B. Plaintiff's MIL 2 – Driver Policy Agreement and Handbook.

Plaintiff asks the Court to preclude evidence of AAA's Driver Policy Agreement ("DPA") and Employee Handbook. Doc. 82. Plaintiff argues that these documents are irrelevant and that consideration of them is foreclosed by the Ninth Circuit's decision. Again, the Court is not persuaded.

The insurance policy Defendant issued to AAA defines "insured" as "[a]nyone . . . using *with your permission* a covered 'auto' you own." Doc. 52 at ¶ 64 (emphasis added). Thus, whether Foutz was an insured under Defendant's policy at the time of the accident turns on whether she was using the vehicle with AAA's permission. AAA's permission is contained in the DPA. To determine whether Foutz acted within the scope of AAA's permission, therefore, the jury must consider the DPA. That document clearly is relevant.

Defendant contends that the Employee Handbook is also relevant to show AAA's zero tolerance policy for alcohol. The Court cannot conclude at this stage that the Handbook is irrelevant to the question of whether Foutz's use of the vehicle was permissive, and therefore cannot grant the motion in limine on this issue. Plaintiff may object if the Handbook is offered at trial, and the Court will rule at that time.

Nor can the Court conclude that the Ninth Circuit foreclosed admission of either the DPA or the Handbook. The Court of Appeals itself said that "[w]hen a permissive user deviates in a substantial way from an employer's specific instructions regarding the manner in which a vehicle should be operated, it may be that coverage is defeated." Doc. 69-1 at 7. The appellate court's next statement – "That has not occurred here, however, even assuming that the DPA defined the scope of permitted use" – was made in the light most favorable to Plaintiff, as noted above. The Court cannot conclude that the Ninth Circuit engaged in factfinding reserved for the jury in this coverage case, particularly in light of its ultimate conclusion: "In sum, we conclude that there is at least a triable issue of fact as to whether Foutz's use of the vehicle at the time of the accident was either permissive or a minor deviation from the permission she was granted." *Id.* Plaintiff's MIL 2 (Doc. 82) is **denied**.

### C. Plaintiff's MIL 3 – Coverage Witnesses Other That Foutz.

Plaintiff asks the Court to preclude Defendant from presenting any witnesses other than Foutz on the coverage issue in this case. Doc. 83. As noted above, however, the key coverage issue is whether Foutz used the vehicle within the scope of the permission granted by AAA and deviated in no more than a minor way from that permission. The scope of AAA's permission is a factual issue to be resolved by the jury. Witnesses who can testify about the terms of AAA's permission clearly are relevant. Indeed, Defendant notes that some of the AAA employees have disagreed with Foutz's testimony about the scope of her permission. The Court can see no basis for withholding their testimony from the jury, assuming it otherwise satisfies the rules of evidence. Plaintiff's MIL 3 (Doc. 83) is therefore **denied**.[3]

///

///

---

[3] Plaintiff's argument is based in part on the assertion that the only relevant considerations for the magnitude of Foutz's deviation are "duration, distance, time, or purpose." Doc. 83 at 2. As noted above, the Court cannot conclude that the minor deviation rule is limited to these four factors.

### D. Plaintiff's MIL 4 – Underlying Incident.

Plaintiff asks the Court to preclude any evidence of the underlying accident, arguing that the facts of the accident are irrelevant and would be prejudicial. Doc. 84. Plaintiff claims the jury may be prejudiced because "the facts of the collision tend to indicate there may not have been any liability on the part of Foutz" and the injuries may garnish sympathy for Plaintiff. *Id.* at 2. As in its summary judgment ruling, the Court again finds the first of these arguments – that there may not have been liability on the part of Foutz – remarkable:

> Plaintiff presumably views his sole responsibility for the accident as irrelevant now that he has trained his aim on Defendant and its alleged insurance bad faith toward Foutz. But the Court cannot help observing that the purpose of Arizona's insurance-claim assignment law is, at least in part, to make whole an underlying meritorious plaintiff who was denied recovery because the underlying defendant could not pay a judgment and her insurer wrongfully denied coverage. It assuredly is not to permit a plaintiff who has no valid claim to file a lawsuit and create an insurance coverage dispute from which he might profit. [T]he Court views this case as a misuse of Arizona law.

Doc. 59 at 3.

The parties agree that one of the issues in this case is whether the agreement between Plaintiff and Foutz was the product of fraud or collusion, but they disagree on who bears the burden of proof on this issue. Doc. 97 at 10. The Court concludes in the next section that Defendant bears the burden on fraud or collusion, but reserves until further argument the question of whether Defendant should be precluded from asserting fraud and collusion at trial. The Court therefore will take MIL 4 (Doc. 84) under advisement. Nor can the Court conclude that the underlying facts of the accident are irrelevant to the jury's understanding of whether Foutz acted within the scope of the permission granted by AAA.

### E. Plaintiff's MIL 5 – Damron Agreement, Fraud, and Collusion.

Plaintiff asks the Court to exclude the Damron agreement he entered into with Foutz and any evidence or argument that it was the product of fraud or collusion. Doc. 85. He argues that this evidence would be irrelevant, prejudicial, and confusing to the jury, and has never been properly disclosed.

- 6 -

The Court cannot conclude at this time that evidence of the Damron agreement will be irrelevant, or that it will be confusing to the jury. The question of whether Defendant failed to disclose evidence of fraud or collusion is not directly addressed in Defendant's response, primarily because Defendant argues that Plaintiff bears the burden or proving that the Damron agreement was not fraudulent or collusive. Doc. 108 at 1-2.

The Court concludes that Defendant, not Plaintiff, bears the burden on fraud and collusion. Defendant supports its position to the contrary on cases addressing Morris agreements. *See, e.g.*, *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1024 (Ariz. 2005) ("To protect the insurer, we place the burden on the insureds (or their assignees) to show that any Morris agreement is free of "fraud or collusion[."]). Plaintiff also cites a standard Arizona jury instruction (RAJI Bad Faith 13) that concerns Morris agreements.

The rule is different for Damron agreements. As the Arizona Supreme Court has explained:

> We take this opportunity, however, to emphasize our prior admonition that when an insurer refuses to defend, as State Farm did here, it does so "at its peril," and if a court later finds coverage, the insurer must pay the damages awarded in the default judgment (at least up to the policy limits) *unless it can prove fraud or collusion*. *Parking Concepts, Inc.* [*v. Tenney*, 83 P.3d 19, 22 n.3 (Ariz. 2004)] ("[I]n cases where the insurer has refused to defend and the parties enter into a Damron agreement, the insurer has no right to contest the stipulated damages on the basis of reasonableness, but rather may contest the settlement only for fraud or collusion.").

*Quihuis v. State Farm Mut. Auto. Ins. Co.*, 334 P.3d 719, 730 (Ariz. 2014); *see also Lexington Ins. Co. v. Scott Homes Multifamily, Inc.*, No. CV-12-02119-PHX-JAT, 2015 WL 751204, at *13 (D. Ariz. Feb. 23, 2015) ("Thus, when a Damron agreement is at issue and a court finds coverage under the policy, the insurer's sole defense is that the settlement agreement was the product of fraud or collusion."). Because the agreement at issue here is a Damron agreement, Defendant must "prove fraud or collusion" in this case. *Id.*[4]

---

[4] Defendant cites *BDPJ Houston, LLC v. Cont'l Cas. Co.*, No. 2:10-CV-01018-TMB, 2012 WL 13018734, at *2 (D. Ariz. Sept. 24, 2012), which held that the burden rests on the proponent of a Damron agreement because, "[i]n the context of a Damron agreement, the Arizona Supreme Court has not clearly stated whether the burden of proof

- 7 -

Because Defendant did not address the issue of whether it disclosed evidence of fraud or collusion during the course of this litigation, the Court will reserve ruling on this motion until the Final Pretrial Conference. The parties should be prepared to address whether Defendant disclosed such evidence and, if not, the effect of that non-disclosure. Plaintiff's MIL 5 (Doc. 85) is taken under advisement.

### F. Defendant's MIL 1 – Damages.

Defendant asks the Court to preclude evidence of the $5 million stipulated judgment in the Damron agreement and Plaintiff's injuries. Doc. 88. Plaintiff agrees that the motion should be granted if the Court refuses to give Defendant's requested instruction 2, which would instruct the jury that Plaintiff must prove the Damron agreement was not fraudulent or collusive, and was fair and reasonable. *See* Doc. 93 at 53; Doc. 104 at 2.

As noted above, Defendant, not Plaintiff, has the burden of proof on fraud and collusion. The Court also concludes that Plaintiff need not prove that the stipulated judgment was fair and reasonable. The Arizona Supreme Court has instructed that "in cases where the insurer has refused to defend and the parties enter into a Damron agreement, the insurer has no right to contest the stipulated damages on the basis of reasonableness[.]" *Parking Concepts, Inc.*, 83 P.3d at 22 n.3. The Court accordingly will not give Defendant's proposed instruction 2, and therefore will grant the motion in limine as Plaintiff has agreed. Defendant's MIL 1 (Doc. 88) is **granted**.

### G. Defendant's MIL 2 – Agreement and Covenant Not To Execute.

Defendant moves to preclude admission of or evidence regarding the contents of the Damron agreement. Doc. 89. Defendant argues that the agreement contains hearsay and lacks foundation, and that no witness has been identified to testify about its contents. *Id.* at 1-2. This argument is a bit confusing given that Defendant opposed Plaintiff's motion to preclude the agreement. *See* Doc. 108.

---

is on the proponent of the agreement or the insurer to show fraud or collusion." *Id.* at *2. The Arizona Supreme Court made that clear statement two years later in *Quihuis*, as noted above.

- 8 -

Plaintiff agrees that the agreement is not relevant to the coverage issue in this case, but asserts that portions of it are relevant to the bad faith issues. Doc. 105. He asserts that irrelevant or inadmissible portions can be redacted. He argues that the following portions should be admitted: the assignment of Foutz's claims to Plaintiff, the stipulation of judgment, and Plaintiff's agreement not to execute against Foutz. *Id.* at 2.

Plaintiff argues that the agreement is not inadmissible hearsay because it is an admission by Plaintiff. *Id.* Even if it could be viewed as admission – a matter the Court need not decide – that would make it admissible only if offered by Defendant, not Plaintiff. *See* Fed. R. Evid. 801(d)(2).

Plaintiff argues that the agreement is a statement against interest by Foutz. But the Court cannot conclude that the agreement, which protected Foutz from personal liability and ended the litigation against her, was "contrary to [her] proprietary or pecuniary interest or had . . . a great tendency to invalidate [her] claim against someone else or to expose [her] to civil or criminal liability[.]" Fed. R. Evid. 804(b)(3)(A).

Plaintiff further argues that the agreement is a business record (Rule 803(6)) or falls under Rule 807, but makes no effort to show how the elements of these rules are satisfied.

Defendant asserts that no witness has been identified to testify about the agreement, but Plaintiff notes that Foutz was questioned about it during her deposition, clearly demonstrating her knowledge regarding the agreement.

The Court concludes that it cannot grant the motion at this stage. The issues it raises, including whether and when it may be relevant in this case, what portions are relevant, and whether it is barred by the hearsay rules must be decided at trial. As a result, Defendant's MIL 2 (Doc. 89) is **denied**.

### H.     Defendant's MIL 3 – Purpose/Manner Distinction.

Defendant asks the Court to preclude Plaintiff from asserting that the only issue in this case is the purpose for which Foutz drove the vehicle (a personal errand) and not the manner in which she operated it (while intoxicated). Doc. 90. Defendant responds that the

only matters to be considered in deciding whether Foutz acted beyond the scope of her permission are "duration, distance, time, and purpose." Doc. 106 at 2.

As discussed above, the Court cannot conclude that consideration of the minor deviation rule is limited to these four factors. Nor can the Court conclude that the Ninth Circuit found, as a matter of fact or law, that driving while intoxicated was not beyond the scope of Foutz's permission. Defendant's MIL 3 (Doc. 90) is **granted**.

### I.     Plaintiff's Motion to Bifurcate.

Plaintiff asks the Court to bifurcate the trial between coverage and bad faith phases. Doc. 86. He argues that the coverage phase will last only a few hours, will be focused solely on whether Foutz exceeded her permission with respect to "duration, distance, time, and purpose," and will require only one witness – Foutz. As explained above, however, the Court does not view the coverage issue as so simple. Defendant will be permitted to present other witnesses from AAA on the scope of the permission granted by the company, and some of these witnesses, as well as Foutz, likely will testify during the bad faith phase about the information they provided Defendant. Because there is overlap between the evidence to be presented in the two phases of the case, and the coverage phase will not be as brief as Plaintiff asserts or offer the time savings he suggests, the Court concludes that bifurcation is not warranted. The motion to bifurcate (Doc. 86) is **denied**.[5]

### J.     Other Motions.

The Court will address Plaintiff's motion for sanctions (Doc. 113) at the Final Pretrial Conference (defense counsel should be prepared to address the motion at that time), and the parties' *Daubert* motions (Docs. 87, 91) by separate order.

---

[5] Defendant suggests that the Court should enter judgment on the bad faith claim because two judges have found that there is no coverage and two judges have found that coverage presents an issue of fact, demonstrating "fair debatability." Doc. 109 at 2. Defendant cites no law to show that rulings of judges on legal issues can replace the jury's factual determination on the "fairly debatable" issue. Defendant suggests that it raised the "fairly debatable" issue in its motion for summary judgment years ago, and asks the court to revisit it now. But this case has been back from the Court of Appeals for more than six months (Doc. 69), and Defendant should have presented this suggestion well before now – the eve of the Final Pretrial Conference and only weeks before trial. This case will proceed to trial as scheduled.

- 10 -

Defendant has also filed a motion to quash. Doc. 119. Plaintiff's counsel should be prepared to address this motion at the Final Pretrial Conference, including how out-of-state witnesses more than 100 miles from the courthouse can be compelled to attend trial under Rule 45(c)(1), and how Plaintiff can use Rule 30(b)(6) – a discovery rule – in a trial subpoena.

**IT IS ORDERED** that the pending motions are denied, granted, or taken under advisement as set forth above.

Dated this 15th day of December, 2021.

*David G. Campbell*
David G. Campbell
Senior United States District Judge