**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James McGee, | No. CV-17-04024-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Zurich American Insurance Company, | |
| Defendant. | |

In an order addressing the parties' motions in limine, the Court discussed but did not decide Plaintiff's motions in limine 4 and 5. Doc. 122 at 6-8. The Court and the parties addressed these motions at the Final Pretrial Conference on December 17, 2021, and Defendant filed an additional memorandum on December 20, 2021. Doc. 128. The Court rules on each motion in this order.

Plaintiff James McGee sued Defendant Zurich American Insurance Company for breach of contract and bad faith, alleging that Defendant improperly refused to defend Elizabeth Foutz in an underlying tort action brought against her by Plaintiff. Plaintiff was injured when his vehicle collided with Foutz, who was driving a car provided by her employer, AAA Landscaping. Defendant provided auto insurance to AAA, and the key questions for trial are whether the policy covered Foutz's use of AAA's vehicle at the time of the accident and whether Defendant acted in bad faith when it denied coverage. Foutz assigned her insurance coverage and bad faith claims to Plaintiff in a Damron agreement

that resolved the underlying tort case, and Plaintiff now asserts those claims against Defendant.

### A. Plaintiff's MIL 5 – Damron Agreement, Fraud, and Collusion.

Plaintiff asks the Court to exclude the Damron agreement he entered into with Foutz and any evidence or argument that it was the product of fraud or collusion. Doc. 85. He argues that this evidence would be irrelevant, prejudicial, and confusing to the jury, and has never been properly disclosed. Defendant's response did not address many of these arguments, but instead argued primarily that Plaintiff bears the burden or proving that the Damron agreement was not fraudulent or collusive. Doc. 108 at 1-2. The Court disagreed, holding that Defendant, not Plaintiff, bears the burden of proof on fraud and collusion. Doc. 122 at 6-8.

After considering the additional arguments by the parties, the Court will grant Plaintiff's motion in part and deny it in part.

#### 1. Failure to Disclose Under the MIDP.

This case is governed by the Court's Mandatory Initial Discovery Pilot ("MIDP"). Doc. 4. The MIDP was established by General Order 17-08 and required the parties to disclose, "[f]or each of your claims or defenses, . . . the facts relevant to it and the legal theories upon which it is based." Doc. 4 at 7, ¶ 4. Each party was also required to disclose all documents "that you believe may be relevant to any party's claims or defenses." *Id.* ¶ 3. The General Order specifically states that "Rule 37(b)(2) shall apply to mandatory discovery responses required by this order." *Id.* at 6, ¶ 11. Rule 37(b)(2) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery," the Court may issue an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses[.]" Fed. R. Civ. P. 37(b)(2)(A)(ii).

Defense counsel agreed at the Final Pretrial Conference that Defendant never disclosed its fraud or collusion defense in its MIDP responses. Defendant asserts that it included the defense in its answer, but Defendant's answer says only that "Plaintiff's claim is barred by fraud or collusion." Doc. 8, ¶ 80. It does not disclose the facts relevant to the

- 2 -

defense, the legal theories on which it is based, or the documents relevant to the defense, all of which were required by the MIDP. Because Defendant was ordered to provide this information to Plaintiff and failed to do so, the Court will prohibit Defendant from presenting or supporting the defense at trial. Fed. R. Civ. P. 37(b)(2)(A)(ii).

## 2. Defendant's Lack of Evidence for Fraud or Collusion.

The Court additionally concludes that Defendant has identified no evidence that would show fraud or collusion in this case. During the Final Pretrial Conference, Defendant identified the following evidence as supporting its defense of fraud or collusion: Ms. Foutz testified that she had no fault for the underlying accident; the Damron agreement was proposed to Ms. Foutz and her counsel by Plaintiff's attorneys; Ms. Foutz had no knowledge of what the assignment of her rights entailed; she was not involved in determining the stipulated damages amount of $5 million; no discovery was taken in Plaintiff's case against Ms. Foutz; and Ms. Foutz was provided a free, pro bono defense by a friend. Defendant's recent filing adds that the Damron agreement was made only two months after the parties made their initial report in the underlying case and Defendant believes the stipulated judgment is excessive and wishes to demonstrate that fact to the jury. Doc. 128 at 4-5.

Defendant cites a number of cases for the definition of fraud and collusion. The most common feature of these cases appears to be that the collusive agreement was secret and perpetrated some kind of fraud on the court or other parties. *See*, *e.g.*, *Hone v. Climatrol Indus., Inc.*, 59 Cal. App. 3d 513, 522, fn 4, 130 Cal. Rptr. 770, 774 (Cal. App. 1976) ("a deceitful agreement or compact . . . to defraud a third party of his right," "a secret arrangement . . . to defraud a third person," "a secret combination . . . for fraudulent or deceitful purposes"); Doc. 128 at 2 ("Collusion requires a 'deceitful agreement,' 'secret arrangement,' or 'a secret combination [...] for fraudulent or deceitful purposes'" (citing cases)); *In re Alcorn*, 41 P.3d 600, 601 (Ariz. 2002) (secret agreement that resulted in a manipulated case being presented to the court, without the court's knowledge, to persuade the court to reverse a summary judgment ruling in favor of another defendant).

A more relevant decision was issued by the Arizona Court of Appeals in *A Tumbling-T Ranches v. Flood Control District of Maricopa County*, 204 P.3d 1051 (Ariz. Ct. App. 2008). In response to the defendant's argument that a Damron agreement was fraudulent or collusive, and the court of appeals provided this relevant explanation:

> This issue was squarely addressed in *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). There, the assertion was made that a covenant not to execute and a subsequent assignment of the underlying judgment constituted a collusive and fraudulent contract. *Id.* at 152-53, 460 P.2d at 998-99. The court held: "It cannot be held that as a matter of law collusion exists simply because a defendant chooses not to defend when he can escape all liability by such an agreement [a covenant not to execute], and must take large financial risks by defending." *Id.* at 155, 460 P.2d at 1001. This scenario describes the exact backdrop for the Dam Owners' decision to enter into the settlement agreement here. The Dam Owners were exposed to a significant damages claim and presented with a means of "escape." As the Damron court held, if "*it appears that the defendant instead of defaulting agrees to perjure himself and testify falsely to statements that are untrue, and that plaintiff is a party to the agreement, or if some other definite evidence of collusion is adduced by proper testimony,*" then there is a basis for a claim of collusion. *Id.* The facts of record do not establish such a showing here.

*Id.* at 1060 (emphasis added).

Defendant's proposed evidence in this case does not include proof that the Damron agreement included some kind of fraud or deception, or a secret agreement that would have the effect of misleading the Court or others. The agreement was readily disclosed by Plaintiff to the trial court below, Defendant, and this Court. The fact that Plaintiff's counsel proposed it to Ms. Foutz, that she did not understand its details and was not involved in setting the amount of the stipulated judgment, that it was entered before discovery occurred in the underlying case, or that she was represented by pro bono counsel does not show that the agreement was fraudulent of collusive. These are common characteristics of Damron agreements entered after an insurer denies coverage for a case and leaves the defendant to fend for herself, as Defendant did here. Nor can the Court conclude that the amount of the judgment constitutes evidence of fraud or collusion, even though Defendant believes it to be unreasonably high. *See Parking Concepts, Inc. v. Tenney*, 83 P.3d 19, 22 n.3 (Ariz.

2004) ("[I]n cases where the insurer has refused to defend and the parties enter into a Damron agreement, the insurer has no right to contest the stipulated damages on the basis of reasonableness, but rather may contest the settlement only for fraud or collusion.").

The Court has twice expressed frustration with the agreement in this case. *See* Docs. 59 at 3, 122 at 6. But this view was stated after Plaintiff himself asserted Ms. Foutz was not at fault. Certainly that concession was not made by Plaintiff in the underlying litigation, and, as noted at the Final Pretrial Conference, Ms. Foutz was facing a high-damages claim, after being cited for DUI in connection with the accident, in a comparative fault state where the jury could assign her fault and damages even if she did not solely cause the accident, and she entered the Damron agreement with the advice of counsel. As a result, Plaintiff's evidence does not show that the agreement was fraudulent or collusive, even if the Court finds this to be a case where the extremes allowed by Damron and related cases are evident.[1]

In summary, Defendant will not be permitted to assert a fraud or collusion defense at trial because it was not disclosed as required by the MIDP, and Defendant has failed to identify evidence that could show fraud or collusion as required to set aside the Damron agreement in this case. The Court cannot conclude, however, that the Damron agreement will itself be irrelevant. Among other things, the jury will need to understand the context in which this case arises, as discussed with the parties at the Final Pretrial Conference. The Court will rule on the admissibility of the Damron agreement, or parts of it, at trial. The Court will grant MIL 5 on fraud or collusion and deny it on the Damron agreement.

### B. Plaintiff's MIL 4 – Underlying Incident.

Plaintiff asks the Court to preclude any evidence of the underlying accident, arguing that the facts of the accident are irrelevant and would be prejudicial. Doc. 84. The Court cannot conclude, however, that the underlying facts of the accident are irrelevant to the jury's understanding of this case, including whether Ms. Foutz acted within the scope of

---

[1] The Court is obligated to apply Arizona law faithfully in this diversity case. Defendant also cites *Continental Casualty Co. v. Hempel*, 4 Fed. App'x 703, 717 (10th Cir. 2001), but its suggestion that the reasonableness of the stipulated judgment may be evidence of collusion does not appear to be consistent with Arizona law.

- 5 -

the permission granted by AAA.  Nor can the Court conclude that it would be unfairly prejudicial.  The Court will rule on objections to underlying facts at trial.

**IT IS ORDERED** that Plaintiff's MIL 4 (Doc. 84) is **denied**, and MIL 5 (Doc. 85) is **granted in part and denied in part** as set forth above.

Dated this 21st day of December, 2021.

David G. Campbell
Senior United States District Judge