**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James McGee, | No. CV-17-04024-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Zurich American Insurance Company, | |
| Defendant. | |

Plaintiff James McGee sued Defendant Zurich American Insurance Company for breach of contract and bad faith, alleging that Defendant improperly refused to defend Elizabeth Foutz in an underlying tort action brought against her by Plaintiff. Plaintiff was injured when his vehicle collided with Foutz, who was driving a car provided by her employer, AAA Landscaping. Defendant provided auto insurance to AAA, and the key questions for trial are whether the policy covered Foutz's use of AAA's vehicle at the time of the accident and whether Defendant acted in bad faith when it denied coverage. Foutz assigned her coverage and bad faith claims to Plaintiff in settlement of the underlying tort case, and Plaintiff now asserts those claims against Defendant. A five-day jury trial will begin on January 6, 2022. *See* Doc. 80.

The parties have filed *Daubert* motions. Docs. 87, 91. Responses have been filed (Docs. 107, 112), and the Court heard oral argument at the Final Pretrial Conference on December 17, 2021. *See* Doc. 129. This order addresses each *Daubert* motion.

## I. Rule 702 and *Daubert* Standards.

Under Federal Rule of Civil Procedure 702, an expert may offer "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence or to determine a fact in issue," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent of expert testimony has the burden of showing, by a preponderance of the evidence, that the proposed testimony is admissible under Rule 702. *See* Fed. R. Evid. 104(a); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). The trial court acts as a gatekeeper for expert testimony to assure that it "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3-4 (D. Ariz. Aug. 2, 2019).

## II. Plaintiff's Motion to Exclude Testimony of Charles Hewitt (Doc. 87).

Defendant disclosed Charles Hewitt as an expert to testify about Defendant's coverage decision and claims handling practices in this matter. Hewitt is a claims consultant and member of the Insurance Expert Network. Doc. 87-1 at 3.[1] Hewitt has nearly 50 years of experience in insurance claims handling and management practices, and has been involved in hundreds of commercial automobile coverage decisions. *Id.*

Hewitt has issued a report in which he opines generally that Defendant's decision to deny coverage "met the standard of care in the industry, followed judicial law, and was only reached after a thorough investigation by claims management and coverage counsel." *Id.* at 3. He offers these specific opinions at the end of his report (*id.* at 8):

> 1. In my experience, Zurich has in place an excellent safeguard process for investigating potential coverage declinations that is at or above the standard of care in the industry. Neither their branch offices nor their [third-party administrator ("TPA")] can decline coverage without Zurich Corporate approval. Coverage issues are investigated and reviewed at

---

[1] Citations are to page numbers attached to the top of pages by the Court's electronic filing system.

Corporate both by experienced claims personnel and experienced coverage counsel. Recommendations are discussed in roundtables with senior claims management before approved. It is this significant review process that protects insureds, or potential insureds, from wrongful denials of coverage, and meets the standard of care in the industry.

2. Notwithstanding Foutz's apparent attempt to hide from Zurich her arrest for Extreme DUI, in my experience Zurich's TPA met the standard of care in the industry by conducting the additional investigation necessary when the arrest was made known. This included obtaining the police report, arrest record, court notes, photographs, and other documents. My opinion is this was adequate to confirm the DUI issue.

3. As required, the TPA elevated potential coverage issues in a timely basis to Zurich Corporate. In my experience this requirement meets the standard of care in the industry. Follow-up additional investigation was requested and conducted through the email exchange with George McNeely and obtaining the relevant documents signed by Foutz. My opinion is this was appropriate direction of the TPA by the Corporate Office on the issue of permissive use and further complies with the standard of care in the industry.

4. Also, in my experience, the standard of care related to coverage declinations requires researching and reporting on relevant case law. Zurich met this standard related to permissive use (see cites to the *James* and *Universal Underwriters* cases above) and then followed protocol before approving the declination based on violation of permissive use. I concur in the conclusion to decline coverage to Foutz based on her Extreme DUI in violation of her driver agreement and Arizona case law.[2]

Under Rule 702, an expert witness may be qualified based on his "knowledge, skill, experience, training, or education[.]" Fed. R. Civ. P. 702; *see Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (Rule 702 "contemplates a broad conception of expert qualifications"). Plaintiff does not dispute that Hewitt is qualified to offer expert opinions in this case. *See* Doc. 87 at 2 (noting Hewitt's "considerable experience" in the insurance field). Plaintiff instead contends that Hewitt's testimony "amounts to nothing more than *ipse dixit* guesswork." *Id.* Specifically, Plaintiff argues that (1) Hewitt's testimony will not assist the trier of fact, and (2) his opinions are not based on sufficient

---

[2] Hewitt also observed that Defendant met the standard of care by not claiming that it had been prejudiced by Foutz's late notice of the claim. *See id.*

- 3 -

facts or data or reliable principles and methods, and he therefore has not reliably applied any principles and methods to the facts of the case. *Id.* at 2-5. Defendant counters that Hewitt's testimony will be relevant to coverage and bad faith issues and his opinions meet the requirements of Rule 702. Doc. 107.

### A. Hewitt's Testimony Will Assist the Trier of Fact.

Whether an insurer has complied with industry standards for handling claims is relevant to the issue of bad faith. *See Rawlings v. Apodaca*, 151 Ariz. 149, 158, 726 P.2d 565, 574 (1986) ("Although compliance with industry custom is not an absolute defense, failure to comply may be relevant to the question of an insurer's alleged bad faith."); *Hangarter v. Provident Life & Accident Ins.*, 373 F.3d 998, 1016 (9th Cir. 2004) (relying on a claims handling expert and holding that the defendants' "deviat[ion] from industry standards supported a finding that they acted in bad faith"). Plaintiff acknowledges that claims handling experts are permitted to testify about relevant industry standards. *See* Doc. 112 at 10 (citing *King v. GEICO Indem. Co.*, 712 Fed. App'x. 649, 651 (9th Cir. 2017) ("Although it is well established that experts may not give opinions as to legal conclusions, experts may testify about industry standards[.]")); *see also Hangarter*, 373 F.3d at 1017 (the district court did not err by allowing an expert to testify that the defendants "departed from insurance industry norms"); *Roberts v. Garrison Prop. Cas. & Ins.*, No. CV-19-01232-PHX-SPL, 2021 WL 3909918, at *6 (D. Ariz. Sept. 1, 2021) ("It is well established in the Ninth Circuit that a claims handling expert may testify to applicable industry standards.") (citing *King* and *Hangarter*); *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1161 (D. Ariz. 2014) ("Both Arizona law and Ninth Circuit law recognize that experts in the area of insurance claim handling are proper [and] that they may testify regarding the application of industry standards to claim handling[.]") (citing *Rawlings* and *Hangarter*).

According to Plaintiff, Hewitt identifies no industry standard and instead offers his personal opinion that "Defendant met whatever the standard of care requires." Doc. 87 at 2. The Court does not agree.

Hewitt states that, based on his substantial experience as a claims adjuster and manager, the applicable standard of care requires that coverage declinations by branch offices undergo "complete review by coverage counsel and senior claims management." Doc. 87-1 at 3; *see id.* at 4 (providing examples from his own experience in which the purported standard of care was met through this review process). Hewitt further states that "[i]t is this significant review process that protects insureds . . . from wrongful denials of coverage, and meets the standard of care in the industry." *Id.* at 8. Contrary to Plaintiff's assertion, Hewitt has identified a specific standard of care, drawn from his years of experience in claims handling. The Court finds that Hewitt's testimony will assist the jury on the bad faith claim.

### B. Hewitt's Opinions Meet the Rule 702 Requirements.

As noted, Rule 702 permits testimony from a qualified expert where (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702(b)-(d). Plaintiff contends that none of these requirements has been met. Doc. 87 at 4-6. The Court does not agree.

#### 1. Sufficient Facts or Data.

Plaintiff asserts that Hewitt is without facts or data "as to the industry standard" because he does not reference "an article, a claims manual, a publication, or a law establishing the industry standard[.]" Doc. 87 at 4. Hewitt states that his opinions are "based on [his] experience and knowledge of the standards of care in the industry[,]" noting that in his "49 years of insurance claims handling and management, [he] was involved in literally hundreds of Commercial Automobile coverage decisions." Doc. 87-1 at 3. Hewitt further explains that during his 19 years with Liberty Mutual Insurance Company, he "handled multiple commercial automobile claims as an adjuster and senior adjuster, managed them in [his] roles as supervisor and manager, taught the coverage to new adjusters and later to experienced adjusters, and . . . was responsible for getting coverage

counsel opinions for branch offices and reviewing those opinions with senior claims management." *Id.*; *see also id.* at 4 (discussing similar experience at other companies).

As Plaintiff acknowledges, expert opinions may be based on "personal knowledge or experience." Doc. 112 at 6 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), and citing *Hankey*, 203 F.3d at 1169 (opinions offered under Rule 702 may "depend[] heavily on the knowledge and experience of the expert")); *see also id.* at 8 (quoting Fed. R. Evid. 702, advisory committee's note to 2000 amendment ("Nothing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony.")). Plaintiff also acknowledges that Hewitt has reviewed numerous documents in this case. Doc. 87 at 4. Those documents, which are listed in Hewitt's report, consist of more than 3,800 pages. *See* Doc. 87-1 at 4-5. Hewitt also sets forth in his report the facts, as he understands them, regarding the underlying accident and Defendant's investigation of Foutz's claim and its coverage decision. *Id.* at 3, 6-7; *see also* Doc. 87 at 4 (noting that Hewitt "summarizes what he believes to be the facts"). The Court finds that Hewitt's opinions are based on sufficient facts for purposes of Rule 702(b).

### 2. Reliable Principles and Methods.

Because Hewitt identifies no industry standard, Plaintiff argues, there are no principles or methods for him to apply. Doc. 87 at 4. This argument is without merit because Hewitt has identified industry standards as discussed above. *See* Doc. 87-1 at 3. The Court finds that Hewitt's opinions satisfy the "reliable principles and methods" requirement of Rule 702(c).

### 3. Reliable Application of the Principles to the Facts of the Case.

Plaintiff contends that Hewitt's opinions "appear[] to be *ipse dixit* guesswork since there is no application of the facts to any standards." Doc. 87 at 5. The Court does not agree. Hewitt opines that Defendant "has in place an excellent safeguard process for investigating potential coverage declinations that is at or above the standard of care in the industry." Doc. 87-1 at 8. He explains that neither the branch office nor the TPA can

decline coverage without Defendant's corporate approval, that coverage issues are investigated and reviewed at the corporate level by experienced claims personnel and experienced coverage counsel, and that recommendations are discussed in roundtables with senior claims management before approval. *Id.* It is this "significant review process," according to Hewitt, that protects insureds "from wrongful denials of coverage[] and meets the standard of care in the industry." *Id.* Hewitt opines that, in this case, "the TPA elevated potential coverage issues in a timely basis to Zurich Corporate" and "additional investigation was requested and conducted[.]" *Id.* He further opines that Defendant met the standard of care by conducting additional investigation when Foutz's DUI arrest was made known and by researching relevant case law on permissive use. *Id.*

The Court finds that Hewitt has reliably applied his proposed standard of care to the facts of this case. *See* Fed. R. Civ. P. 702(d).

### C. Conclusion.

Hewitt's opinions satisfy the requirements of Rule 702, and his testimony will assist the jury in deciding the bad faith claim. Plaintiff's motion to exclude Hewitt's testimony (Doc. 87) will be denied.

### III. Defendant's Motion to Exclude Testimony of Frederick Berry, Jr. (Doc. 91).

Plaintiff disclosed Fredrick Berry as an expert to testify about relevant industry standards and Defendant's claims handling practices in this matter. Berry has prepared a 57-page report (Doc. 112-4) that sets forth his education and experience in the insurance industry (*id.* at 1-2); the materials and legal authority he reviewed (*id.* at 2-9); relevant facts (at 10-40); the business of insurance and a history of insurance regulation (at 40-43); the common law duty of good faith and fair dealing (at 43-46); his opinions regarding industry standards for adjusting first-party insurance claims (at 46-53); his opinions on Defendant's handling of Foutz's claim (at 53-55); and additional material he requested (at 55-57).

Defendant contends that Berry is not qualified to offer his opinions, that he is an advocate and not an expert, and that the probative value of his testimony is outweighed by the risk of confusion and prejudice. Doc. 91 at 1-11. Defendant further contends that, to

the extent Berry is qualified to testify, he should be precluded from expressing legal opinions or testifying about Defendant's intent, motive, and state of mind. *Id.* at 11-15.

### A. Berry Is Qualified to Testify as an Expert Under Rule 702.

An expert is qualified to testify under Rule 702 where the expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire*, 526 U.S. at 156. "Because Rule 702 'contemplates a *broad conception* of expert qualifications,' only a '*minimal foundation* of knowledge, skill, and experience' is required." *Nay v. BNSF Ry. Co.*, No. C19-5425-BHS-MLP, 2021 WL 5321979, at *5 (W.D. Wash. Nov. 16, 2021) (quoting *Hangarter*, 373 F.3d at 1015-16).

Berry attended Arizona State University between 1965 and 1973, earning a Bachelor of Science degree in insurance and a Juris Doctor degree. Doc. 112-1 at 1. He served as the Arizona Deputy Director of Insurance and Hearing Officer from July 1976 until September 1978. *Id.* He has been a licensed insurance producer in Arizona since 2010, has served as Chairman of the Arizona State Bar's Insurance Committee (1996-2002), and is a member of various insurance-related societies. *Id.* at 1-2.

Defendant asserts that Berry "has never worked in the insurance industry" and "has absolutely no training or experience in *handling* insurance claims." Doc. 91 at 3, 5 (emphasis in original). But as Plaintiff notes, Berry has served as a claims adjuster for two insurance companies. Doc. 112 at 3. Berry states that he served in these positions as "the Arizona resident claim manager for mostly automobile claims." Doc. 112-3 at 2. He both engaged in and supervised the investigation and evaluation of claims, primarily automobile liability claims. *Id.* at 2-3. He supervised the claims adjusters in his office and had authority to approve certain settlement offers. *Id.* at 3. While those positions were fill-in roles in the 1980s or 1990s (*see id.* at 3-4), Berry does in fact have experience handling insurance claims.[3]

---

[3] The cases Defendant cites are inapposite because the expert in each case had no experience in claims handling. *See Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 66 (Ct. App. 1985) ("[A]s Aitkin candidly admitted, he had never been employed nor even retained as counsel by an insurance company."); *Trident Web Offset, Inc. v. Emps. Mut. Cas. Co.*, No. D040133, 2003 WL 21291039, at *15 (Cal. Ct. App. June 5, 2003) ("Greenfield is an attorney whose practice consists of first party and third

Defendant further asserts that Berry has no "specialized knowledge" of third-party liability claims, noting that his report focuses on first-party claims. Doc. 91 at 2, 8-9  As noted, Berry does have some experience handling third-party liability claims. *See* Doc. 112-3 at 2-3.  And while he clearly focuses on first-party claims in his report, he also discusses relevant Arizona law for third-party claims. *See* Doc. 112-4 at 6 (discussing Revised Arizona Jury Instruction (Civil) 6th, Bad Faith 8 (Third Party) ("The duty of good faith and fair dealing requires an insurance company to give the same consideration to its insured's interests as it gives to its own when it considers a settlement offer."); *id.* at 46 (opining that "[t]he insurance company must treat its policyholder's interests with equal regard as it does its own interests"); *id.* at 55 ("Disregarding the fair interests of the insured in the investigation and evaluation process is . . . probative evidence of bad faith claim handling[.]").

Defendant contends that there are "important distinctions" between first-party and third-party claims (Doc. 91 at 2), but never describes those distinctions or explains how they render Berry's opinions inadmissible. *Cf. Clearwater v. State Farm Mut. Auto. Ins. Co.*, 792 P.2d 719, 723 (Ariz. 1990) (explaining that while the applicable standard of conduct is different, "[t]he duty to accept reasonable settlements in third-party situations and the duty not to withhold payment of first-party claims 'are merely two different aspects of the same duty'") (citation omitted).  Defendant's reliance on *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576 (10th Cir. 1998), is misplaced because the expert in that case "lacked specialized knowledge on New Mexico bad faith cases" (the applicable law) and

party insurance defense and insurance coverage[.]"); *Lopez v. Allstate Fire & Cas. Ins. Co.*, No. 14-20654-Civ-COOKE/TORRES, 2015 WL 5584898, at *5 (S.D. Fla. Sept. 23, 2015) ("[Kaydek] has no experience adjusting claims for insurance companies, and has never been employed by an insurance company."); *Novak v. Progressive Halcyon Ins. Co.*, No. CIV.A. 04-0632, 2005 WL 5989782, at *3 (M.D. Pa. Sept. 13, 2005) ("While qualified as an attorney with knowledge of insurance statutes and regulations, [Foster] offers nothing in the way of experience . . . in the internal handling of claims."); *Butler v. First Acceptance Ins. Co.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009) ("Jenkins has never worked in the insurance industry . . . [and his] experience relates to personal injury and insurance claims in general."); *Tactical Stop-Loss LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 08-0962-CV-W-FJG, 2010 WL 427779, at *4 (W.D. Mo. Feb. 2, 2010) ("[N]either Mr. Lakin's Expert Report nor his curriculum vitae reveal any experience in handling insurance claims[.]").

the district court had determined that "the jury was capable of determining the bad faith issue on its own[.]" 162 F.3d at 586-87.

The Court finds that Berry is sufficiently qualified to testify on coverage and bad faith issues based on his education, knowledge, and experience in the insurance industry. Defendant's motion will be denied in this regard.

### B.     Berry Will Be Precluded from Testifying as an Advocate.

"[W]here an expert becomes an advocate for a cause, he . . . departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1004, 1006-07 (S.D. Cal. 2018); *see also Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*, No. 17-CV-06177 SBA, 2021 WL 4923379, at *2 (N.D. Cal. Aug. 31, 2021) ("Experts are not advocates in the litigation but sources of information and opinions.") (citation omitted).

Defendant argues that Berry's report largely consists of "argument riddled with inflammatory statements and one-sided propaganda directed at the insurance industry as a whole." Doc. 91 at 10. The Court agrees that much of Berry's report "reads like that of an advocate rather than an expert[.]" *Burrows v. BMW of N. Am., LLC*, No. CV 17-6960-R, 2018 WL 6314187, at *2 (C.D. Cal. Sept. 24, 2018). For example, Berry states:

- The collision was shocking. . . . . [N]o car, no matter how sturdy, could have prevented major injury in a collision of this magnitude (Doc. 112-4 at 11).

- In March 2016, after Zurich unilaterally and wrongfully declined coverage and representation and to protect herself from financial ruin Foutz entered into an "Agreement and Covenant Not to Execute" assigning her rights against Zurich to McGee (*id.* at 39).

- Litigation is very expensive, time-consuming, and emotional. An insurer's great power of litigation tolerance was explained above. Insurance companies know that they possess this litigation power and some unethical insurance companies abuse this power as they utilize the Law of Large Numbers (*id.* at 53).

- Insurance companies know that most claims can be compromised for far less money than the insurance company is obligated to pay and they are fully

- aware of the fact that many claimants will simply give up a claim either out of disgust, fear or the inability to locate competent counsel to represent their interests (*id.*).

- The net effect of the unethical misuse of the litigation power is that insurance companies know with certainty that few of the claimants that are denied benefits will actually withstand the gauntlet of litigation.  Few claimants actually obtain a day in court where their case can be presented to a fair minded jury and judge (*id.*).

- In my judgment, Zurich has violated the standard of care and misused its power of money, time, superior knowledge, and litigation tolerance as it provided substandard investigative, coverage, and claim-processing services to and for Foutz (*id.*).

- Zurich was so blinded by protecting its own interests that it failed to look out for Foutz's interests in the slightest (*id.* at 54).

Berry also provides commentary on what the facts purportedly show, and he repeatedly asserts that Defendant's claims adjusters and managers have "admitted" and "conceded" certain facts.  *Id.* at 18-32, 38-39.

Plaintiff asserts in his response that Berry understands his role as an expert and will not testify as an advocate, and gave the same assurance at oral argument.  Doc. 112 at 8-9.  The Court will make sure of it.  Defendant's motion will be granted on this point.

    **C.**    **Berry Will Be Precluded from Expressing Legal Opinions.**

The Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citations omitted; emphasis in original).  "This prohibition of opinion testimony on an ultimate issue of law recognizes that, 'when an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *Id.*

Defendant argues that Berry should be precluded from expressing legal opinions.  Doc. 91 at 11-12.  The Court agrees.

Berry acknowledges that "it is not [his] role as an insurance expert witness to provide an opinion concerning the legal duty of an insurer" (Doc. 112-4 at 43), but he proceeds to offer his opinion on the common law duty of good faith and dealing (*id.* at 43-46). Much of Berry's report contains his opinion of various legal authorities and principles, including the permissive use doctrine, an insurer's duty to conduct an adequate investigation and reasonably evaluate a claim, and Arizona's regulation of claims handling. *Id.* at 3-9, 42-43. His report includes lengthy quotations from case law, statutes, and jury instructions on bad faith issues. *See id.* Any such testimony at trial would impermissibly "invade[] the role of the Court to instruct the jury on the applicable law." *Bahra v. Cty. of San Bernardino*, No. EDCV-161756 JGB (SPx), 2021 WL 3914042, at *3 (C.D. Cal. June 24, 2021) (citation omitted). "Indeed, courts consistently hold that 'an expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts.'" *Id.* (citation omitted); *see also Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005) ("The principle that legal opinion evidence concerning the law is inadmissible is so well-established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle.").

Berry may testify about relevant industry standards contained in his report and offer his opinions on the reasonableness of Defendant's claims handling in this case, but he may not opine on legal standards and ultimate issues of law. *See King*, 712 F. App'x at 651.[4] Defendant's motion will be granted in this respect.

### D. Testimony About Intent, Motives, and State of Mind.

Berry opines on the intent, motivations, and state of mind of insurers in general and Defendant in particular. *See, e.g.*, Doc. 112-4 at 53-54. Defendant argues that all such opinions should be excluded, noting that the general rule precluding an expert from

---

[4] The Court recognizes that this can be a difficult distinction to discern. An expert's opinion on whether an insurer complied with the standard of care necessarily involves identification of the standard and evaluation of the insurer's conduct in light of it. But what an expert clearly cannot do is purport to tell the jury what the law requires – that is the province of the Court – or how it should decide the case under the law – that is the province of the jury. The Court will do its best to address these issues as they arise at trial.

- 12 -

testifying about intent, motive, and state of mind applies specifically to testimony by a "bad faith expert." Doc. 91 at 12-14 9 (citations omitted).

"Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Siring v. Oregon State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013). "This is so because:

> Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case. The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury."

*Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182550, at *2 (D. Ariz. Mar. 7, 2018) (quoting *Siring*, 927 F. Supp. at 1077).

Because Berry's testimony on intent, motive, and state of mind is "outside the bounds of appropriate expert testimony[,]" it will be precluded. *In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495187, at *3 (D. Ariz. Jan. 22, 2018). Defendant's motion will be granted in this regard.

### E. Defendant's Rule 403 Argument.

According to Defendant, some jurors may erroneously assume that, as a lawyer, Berry has some unique insight into claims handling which a career claims person, such as Hewitt, would not possess. Doc. 91 at 11. Defendant contends that the probative value of Berry's testimony is outweighed by the risk of confusion and prejudice to Defendant. *Id.* (citing Fed. R. Evid. 403). But when an expert meets the threshold established by Rule 702, "the expert may testify and the jury decides how much weight to give that testimony." *Sampedro v. ODR Mgmt. Grp. LLC*, No. CV-18-04811-PHX-SPL, 2021 WL 2012697, at *2 (D. Ariz. May 20, 2021) (citation omitted).

The Court cannot conclude that Berry should be precluded from testifying under Rule 403. Defendant's motion will be denied in this respect.

/ / /

/ / /

- 13 -

**F.     Berry's Testimony About the Business and History of Insurance.**

Berry's report includes a discussion of the business of insurance and the history of insurance regulation that dates back to the 17th Century. Doc. 112-4 at 40-42. The Court finds that the marginal probative value of this proposed extended testimony is substantially outweighed by the danger of wasting time. Fed. R. Evid. 403. Plaintiff may have Berry touch on this issue to the extent truly relevant, but he may not give the kind of long narrative contained in his report.

**IT IS ORDERED:**

1.     Plaintiff's *Daubert* Motion Regarding Charles Hewitt (Doc. 87) is **denied**.

2.     Defendant's *Daubert* Motion Regarding Frederick Berry, Jr. (Doc. 91) is **granted in part** and **denied in part** as set forth in this order.

Dated this 22nd day of December, 2021.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

- 14 -